## THE MALLAY.

(District Court, D. New Jersey. March 24, 1905.)

SHIPPING—INJURY OF SCHOONER IN SLIP—INSUFFICIENT FASTENING OF SCOW.
   The injury to a schooner's bowsprit as she lay in a slip *held*, under the evidence, to have been due to chafing by the bows of a scow tied a few feet away, and which, through the fault of those in charge, was insufficiently fastened, so that it drifted close to the schooner during a high wind.

In Admiralty.

Foley & Wray, for libelant.
Peter S. Carter, for claimant.

LANNING, District Judge.   On February 6, 1896, the schooner William Bleakley was lying in the slip along and parallel with the northeasterly side of the pier at the foot of Twenty-Fourth street, South Brooklyn, where she had been some three weeks.   Her bow lay toward the outer end of the pier, and about 60 feet back therefrom.   Along and parallel with the outer end of the pier (being the northwesterly end) a scow, which I designate scow No. 1, was lying; her direction being at right angles to that of the schooner, and her end extending some feet (how many does not appear) beyond the northeasterly side of the pier.   Between scow No. 1 and the schooner lay scow No. 2, but, as she was too long to get her full length in between scow No. 1 and the schooner, she lay with her bow tied close to the northeasterly side of the pier, a few feet in front of the schooner's bow, and with her stern outside of the end of scow No. 1.   Her position, therefore, was diagonal to the northeasterly side of the pier.   Scow No. 3 (being the Mallay, complained of by the libelant) lay by the side of the scow No. 2.   Her bow was about even with the bow of scow No. 2, but, being several feet longer, her stern extended out of the slip, and in front of the scow No. 1.   Her position, therefore, was also diagonal to the northeasterly line of the pier.   Scow No. 4 lay alongside of the schooner, with the schooner between it and the pier.   The bow of this last-mentioned scow was about even with the bow of the schooner. The bowsprit of the schooner was about 35 feet in length, and early in the morning of February 7th, a heavy wind having arisen, the underside of the bowsprit, about halfway between its end and the knightheads, was gouged and dug out to such an extent that it was necessary, as the libelant claims, to put into the schooner a new bowsprit.   The question is, what vessel is responsible for the

damage, and, if the Mallay is responsible for it, what amount shall be awarded to the libelant?

The claimant of the Mallay insists that the damage was done by the lines of scow No. 4 which tied it to the pier; these lines, as it appears, passing both over and under the schooner's bowsprit. But the evidence utterly fails to support this theory. John Connors, William Ward, and John Carter all slept on the schooner during the night of February 6th. They rose early in the morning of February 7th, and found that during the night the storm had driven the Mallay toward the schooner, and that the Mallay was then bouncing up and down on the waves, striking the bowsprit of the schooner and gouging a hole in it. Each of these men declares that he helped in the work of readjusting the lines of the Mallay and in pushing her away from the schooner. The testimony of these eyewitnesses is not contradicted by that of any other witness. Lewis Swansen, the master of the Mallay, who slept on her that night, but who, when she was pushed away from the schooner, had evidently gone to his breakfast, himself says that he saw the damage done to the bowsprit about noon on February 7th, that the bowsprit was rotten, and that he took a handful of the wood of the bowsprit and found it "soft and rotten." It is not pretended by any one that at the time when he says be observed the condition of the bowsprit he could have reached it. If he handled any of the bowsprit's wood at all, he must have found it on his own scow. Indeed, Joseph Beyers, a witness for the libelant, declares that he saw ground pieces of the wood that had been gouged out of the bowsprit on the bow of the Mallay at the time the Mallay was pushed away from the schooner. I have no doubt, therefore, that the damage to the bowsprit was done by the Mallay. Nor does the evidence convince me that there was any rotten wood in the bowsprit.

The libelant insists that the Mallay was negligently tied, and that the damage was the result of such negligence. Considerable testimony has been taken on this point, but I am of the opinion that the weight of it decidedly favors the libelant. The Mallay does not seem to have had any lines that prevented her from sagging farther into the slip toward the schooner and coming into contact with her bowsprit. The evidence shows that if a line had been run from the bow of the Mallay to the stern of scow No. 2, which lay between her and the pier, it would have been impossible for the Mallay to come into contact with the schooner's bowsprit.

The contention of the claimant that the libelant's schooner was not properly tied to the pier, and that she drifted from the pier toward the Mallay, and thus incurred the injury to her bowsprit, is not, in my opinion, proven. The schooner was well secured with 11 lines, extending both from her bow and her stern to the pier.

The only remaining question, therefore, is as to the amount of damage that shall be awarded to the libelant. The libelant claims $100. I think the evidence shows that it was necessary to substitute a new bowsprit for the injured one. I think, further, that a

136 F.—63

new bowsprit could have been furnished for $80. It may be that a new bowsprit would put the vessel into a somewhat better condition than it previously was, but the claimant cannot take advantage of this fact. The Alaska (D. C.) 44 Fed. 498, 501. The John H. Starin (D. C.) 116 Fed. 433.

A decree in favor of the libelant for $80 may be prepared.